1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    SEKOU KWANE THOMPSON,                  Case No. 23-cv-05079-HSG

8                    Plaintiff,             **ORDER GRANTING MOTION FOR**
                                            **JUDGMENT ON THE PLEADINGS;**
9           v.                              **DENYING AS MOOT REQUEST TO**
                                            **STAY DISCOVERY; DENYING LEAVE**
10   KATHLEEN ALLISON, et al.,              **TO FILE THIRD AMENDED**
                                            **COMPLAINT**
11                   Defendants.
                                            Re: Dkt. Nos. 29, 30
12

13

14          Plaintiff, an incarcerated person housed at Correctional Training Facility ("CTF"), has

15   filed a *pro se* civil rights action, alleging that CTF correctional officers Martin Magana, Oliva

16   Castro, Don Zypel Igacio, A. Pelayo, Oscar Covarrubias, Jo-ann Crews, and Michael Hicks were

17   deliberately indifferent to his safety when they knowingly housed him with a known violent

18   prisoner. Dkt. Nos. 20, 21. This order addresses: (1) Defendants' motion for judgment on the

19   pleadings for failure to exhaust administrative remedies, Dkt. No. 29, and related request for

20   judicial notice, Dkt. No. 29-1; (2) Defendants' request to stay merits-based discovery pending

21   resolution of the motion for judgment on the pleadings, Dkt. No. 30; and (3) Plaintiff's request for

22   leave to file a third amended complaint, Dkt. No. 31 at 2.

23                                       **BACKGROUND**

24   **I.     Operative Complaint (Dkt. No. 20)**

25          In the operative complaint, Plaintiff makes the following relevant allegations. On October

26   4, 2021, defendants Magana, Igacio, and Castro put in a bed request for inmate Bankhead to be

27   housed in Plaintiff's cell; defendant Pelayo accepted the request; defendants Covarrubias and

28   Hicks reviewed the request; and defendant Crews approved the bed assignment. Plaintiff is in a

level I cell.  Inmate Bankhead is a known violent Level II prisoner.  Placing inmate Bankhead in Plaintiff's cell was a violation of prison policy and procedures, which require prison officials to evaluate all factors, including the inmate's history of in-cell assaults or violence, when making, reviewing or approving housing requests.  It was "obvious" to Defendants that inmate Bankhead posed a risk to Plaintiff's safety due to inmate Bankhead's recent fight with another prisoner and because inmate Bankhead was "known for fighting."  On October 28, 2021, Plaintiff was violently attacked and battered by inmate Bankhead.  *See generally* Dkt. No. 20.

In the operative complaint, Plaintiff states that he exhausted administrative remedies by filing Grievance No. 144510.  He states that Grievance No. 144510 bypassed the first level; was rejected at the second level on July 27, 2021; and was denied at the third and final level on October 15, 2021.  Dkt. No. 20 at 2.

## II.    Grievance No. 144510

On July 25, 2021, Plaintiff submitted Grievance No. 144510.  This grievance challenged the June 30, 2021 Unit Classification Committee ("UCC") decision to transfer Plaintiff to Correctional Training Facility, Level II housing.  The grievance stated that CTF Level II's security level was inconsistent with Plaintiff's placement score and that Plaintiff's preferred action was to be transferred to California Institute for Men, Level I housing, so that he could meet the Board of Parole Hearing ("BPH")'s recommendation that he participate in a vocational program, specifically underwater welding.  The grievance further stated that, alternatively, Plaintiff sought to be placed at Sierra Conservation Center.  The grievance argued that these placements would be consistent with the CDCR's programming and needs and Plaintiff's placement score, and allow for safety and security.  The grievance requested that the following actions be taken: that Plaintiff be housed at either CIM Level I or Sierra Conservation Center; that Captain Ortega be reprimanded and retrained regarding the CDCR's missions; and that Plaintiff be compensated for any future harm he might suffer as a result of the UCC's "invalid recommendation and/or action." Dkt. No. 29-3 at 1-5.

On July 27, 2021, CTF's Office of Grievances acknowledged receipt of Grievance No. 144510 and rejected the grievance as anticipatory:

United States District Court
Northern District of California

Your claim concerning Offender Classification; Issue Arising from a UCC, ICC or DRB that is NOS is being rejected by Office of Grievances for the reason(s) indicated below:

Your claim concerns an anticipated policy, decision, action, condition or omission by the Department or departmental staff, generally meaning the action has not happened yet. Once a decision or action has taken place and if you are still dissatisfied, you may file a new grievance.

Your claim regarding Unit Classification Committee (UCC)/Institution Classification Committee (ICC) Action initiated 6/28/21, in which committee recommended you be transferred was reviewed and deemed to be meet [sic] rejection criteria as your Claim concerns an anticipated policy, decision, action, condition, or omission pursuant to Title 15, Section 3487(a)(2).  The transferred recommendation is pending review by the Classification Staff Representative (CSR) at this time; therefore, the action is not yet finalized. Once case is reviewed by the CSR, you may submit a NEW CDCR 602 grievance to the CTF Office of Grievance if you deem the issue still exists.

This serves as your response by the Office of Grievances. If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals.

Do not resubmit this claim to the Office of Grievances at Correctional Training Facility.

Dkt. No. 29-4 at 2.

Plaintiff appealed the rejection to the Office of Appeals.  Dkt. No. 29-5 at 2.  On October 15, 2021, the Office of Appeals denied the grievance:

**III. REASONING AND DECISION**

The Office of Appeals concurs that the institution appropriately rejected the claim at time of receipt.  [Plaintiff] submitted Log #144510 on 7/25/2021, prior to the Classification Services Representative's review and approval on 8/3/2021.  Therefore, the claim is denied as anticipatory.  Subsequently, based upon institutional needs for compaction, [Plaintiff] was moved to the CTF Level II Facility.

**IV. REMEDY**

Your claim has been denied.  Therefore, there is no applicable remedy.

**Decision: Denied**

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is denied.  This decision exhausts the administrative remedies available to the claimant within CDCR.

Dkt. No. 29-5 at 2.  This decision identified the grievance category as "Offender Classification" and the sub-category as "Issue Arising from a UCC, ICC, or DRB that is NOS."

//

//

//

3

**DISCUSSION**

**I.      Motion for Judgment on the Pleadings**

**A.      Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Granting a judgment on the pleadings is proper when, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)).  "Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Id.* (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ) (internal quotation marks omitted).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see also* Fed. R. Civ. P. 8(a) (requiring that complaint contain "short and plain statement of the claim showing that the pleader is entitled to relief").  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, a court need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences; or allegations that contradict matters properly subject to judicial notice. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial

4

1    notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

2          **B.      Request for Judicial Notice (Dkt. No. 29-1)**

3                **1.      Legal Standard**

4          As a general rule, district courts may not consider material outside the pleadings when

5    assessing the sufficiency of a complaint under Fed. R. 12(b)(6).  *Lee v. City of Los Angeles*, 250

6    F.3d 668, 688 (9th Cir. 2001).  However, there are two exceptions to this rule: the incorporation-

7    by-reference doctrine and judicial notice under Fed. R. Evid. 201.  *Khoja v. Orexigen*

8    *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Both of these procedures permit district

9    courts to consider materials outside a complaint without converting a motion to dismiss into a

10   summary judgment.  *Id.* at 998; *see also Lee*, 250 F.3d at 688-89.

11         The incorporation by reference doctrine is a judicially created doctrine that allows a court

12   to consider certain documents as though they were part of the complaint itself.  *Khoja*, 899 F.3d at

13   1002.  This doctrine is to prevent a plaintiff from cherry-picking certain portions of documents

14   that support his claims, while omitting portions that weaken his claims.  *Id.*  Incorporation by

15   reference is appropriate "if the plaintiff refers extensively to the document or the document forms

16   the basis of plaintiff's claim."  *Id.* at 1002.  However, "the mere mention of the existence of a

17   document is insufficient to incorporate the contents" of a document.  *Id*. at 1002.  Under the

18   incorporation-by-reference doctrine, a court may consider evidence on which the complaint

19   "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the

20   plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

21   motion.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  If these conditions are met, the

22   court may treat such a document as part of the complaint, and may assume the truth of the

23   document's contents for purposes of a motion to dismiss under Rule 12(b)(6).  *Daniels-Hall v.*

24   *Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, while a court "may assume [an

25   incorporated document's] contents are true for purposes of a motion to dismiss . . . it is improper

26   to assume the truth of an incorporated document if such assumptions only serve to dispute facts

27   stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1002.

28         Fed. R. Evid. 201(b) permits a court to notice an adjudicative fact if it is "not subject to

1    reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction;

2    or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably

3    be questioned." Fed. R. Evid. 201(b).

4         In *Khoja*, the Ninth Circuit clarified the judicial notice rule and incorporation by reference

5    doctrine, noting that a court may take "judicial notice of matters of public record," but "cannot

6    take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999

7    (citation and quotations omitted). The Ninth Circuit has clarified that if a court takes judicial

8    notice of a document, it must specify what facts it judicially notices from the document. *Id.* at

9    999. Further, "[j]ust because the document itself is susceptible to judicial notice does not mean

10   that every assertion of fact within that document is judicially noticeable for its truth." *Id.* As an

11   example, the Ninth Circuit held that for a transcript of a conference call, the court may take

12   judicial notice of the fact that there was a conference call on the specified date, but may not take

13   judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying

14   interpretations, and there is a reasonable dispute as to what the [document] establishes." *Id.* at

15   999–1000.

16                    **2.        Analysis**

17        Defendants have requested that the Court take judicial notice of the existence and contents

18   of Grievance No. 144150; and the existence and contents of the denials of Grievance No. 144150

19   by the CTF Office of Grievances and by the Office of Appeals. Dkt. No. 29-1. Defendants argue

20   that judicial notice is appropriate because the existence and contents of these documents are not

21   subject to reasonable dispute; because these documents were incorporated by reference into

22   Plaintiff's complaint; and because inmate grievances are public records subject to judicial notice.

23   *Id.*

24        The Court GRANTS Defendants' request for judicial notice for the following reasons.

25   First, the operative complaint incorporates by reference Grievance No. 144150 and the subsequent

26   denials. The complaint identifies Grievance No. 144150 as the grievance that satisfied Plaintiff's

27   requirement under the Prison Litigation Reform Act ("PLRA") to exhaust administrative remedies

28   and lists the subsequent denials in the complaint. Dkt. No. 20 at 2-3. Second, Grievance No.

United States District Court
Northern District of California

1    144150 is a record of a state agency and its existence and contents are not subject to reasonable

2    dispute.  *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take

3    judicial notice of a record of a state agency not subject to reasonable dispute.").  Third, Plaintiff

4    does not dispute the existence or contents of the copy of Grievance No. 144150 and the related

5    denials that are attached to the request for judicial notice.  *Marder*, 450 F.3d at 448.  The Court

6    therefore takes judicial notice of (1) the existence and the contents of Grievance No. 144150; (2)

7    the July 27, 2021 rejection letter from Correctional Training Facility's Office of Grievances; and

8    (3) the October 15, 2021 denial letter from the Office of Appeal, but does not assume the truth of

9    the contents of any of these documents.

10            **C.    PLRA Exhaustion Requirement**

11            The Prison Litigation Reform Act ("PLRA") sets forth the requirement that "[n]o action

12   shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

13   law, by a prisoner confined in any jail, prison, or other correctional facility until such

14   administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's

15   exhaustion requirement is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  All available

16   remedies must be exhausted, and those remedies "need not meet federal standards, nor must they

17   be 'plain, speedy, and effective.'"  *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 739-41 & n.5

18   (2001).  Section 1997e(a) requires "proper exhaustion" of available administrative remedies.

19   *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  Proper exhaustion requires the incarcerated person to

20   use all steps of the administrative process and comply with "deadlines and other critical procedural

21   rules."  *Id.* at 90.  Even when the incarcerated person seeks relief not available in grievance

22   proceedings, exhaustion is a prerequisite to suit.  *Booth*, 532 U.S. at 741.  If an incarcerated

23   person's grievance does not comply with a procedural rule but prison officials decide it on the

24   merits anyway at all available levels of administrative review, it is exhausted.  *Reyes v. Smith*, 810

25   F.3d 654, 656, 658 (9th Cir. 2016) (plaintiff's claim exhausted as to prison doctors named in

26   federal action where grievance plainly put prison officials on notice of nature of wrong alleged in

27   federal action – denial of pain medication by defendant doctors – and prison officials easily

28   identified named prison doctors' involvement in alleged wrong); *Wilkerson v. Wheeler*, 772 F.3d

United States District Court
Northern District of California

834, 840 (9th Cir. 2014) (claim properly exhausted where inmate described nature of wrong and identified defendant as responding officer who deliberately applied pressure to inmate's ankle to inflict pain).

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218. Where a prison's grievance procedures do not specify the level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). The grievance need not include legal terminology or legal theories unless they are necessary to provide notice of the harm being grieved. *Id.* Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id.* The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id.* (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as complaint did, that nurse had ordered lower bunk but officials disregarded that order).

There is an exception to the mandatory exhaustion requirement, namely, the unavailability of administrative remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate must exhaust available remedies, but need not exhaust unavailable ones.") (quoting 42 U.S.C. § 1997(e)(a)). There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 at 643. First, an administrative procedure is unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or

1   navigate it." *Id.* at 643-44.  Third, an administrative remedy is unavailable when "prison

2   administrators thwart inmates from taking advantage of a grievance process through machination,

3   misrepresentation, or intimidation."  *Id.* at 643.

4        Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead

5   and prove.  *Jones*, 549 U.S. at 216.  The defendant's burden is to prove that there was an available

6   administrative remedy, and that the prisoner did not exhaust that available administrative remedy.

7   *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014), *abrogated in part on other grounds by Perttu*

8   *v. Richards*, 605 U.S. 460, 475 (2025).  Once the defendant has carried that burden, the burden

9   shifts to the incarcerated person to come forward with evidence showing that there is something in

10  his particular case that made the existing and generally available administrative remedies

11  effectively unavailable to him.  *Id.*  That is, the burden shifts to the incarcerated person to come

12  forward with evidence showing that there is something in his particular case that made the existing

13  and generally available administrative remedies effectively unavailable to him.  *Id.*  The ultimate

14  burden of proof remains with the defendant.  *Id.*  If undisputed evidence viewed in the light most

15  favorable to the incarcerated person shows a failure to exhaust, a defendant is entitled to summary

16  judgment under Fed. R. Civ. P. 56.  *Id.* at 1166.  But if material facts are disputed, summary

17  judgment should be denied, and the district judge rather than a jury should determine the facts in a

18  preliminary proceeding.  *Id.*  Defendants generally should raise the defense in a motion for

19  summary judgment pursuant to Rule 56, and then produce evidence proving a plaintiff's failure to

20  exhaust.  *Albino*, 747 F.3d at 1166.  However, "[i]n the rare event that a failure to exhaust is clear

21  on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Id.*

22       When an exhaustion claim shares common factual issues with the merits of the claims or

23  defenses, and these issues would be subject to the Seventh Amendment right to a jury trial, then

24  the jury must be given the opportunity to decide the issues of fact raised in the exhaustion claim.

25  *Perttu*, 605 U.S. at 471-72, 479.  Generally speaking, trial courts resolve equitable claims and

26  juries resolve legal claims, but judges may not resolve equitable claims first if doing so could

27  prevent legal claims from getting to the jury.  *Id.* at 471-72.  The trial court's discretion in

28  deciding whether the legal issue or the equitable issue should be decided first is "very narrowly

United States District Court
Northern District of California

9

1    limited and must, wherever possible, be exercised to preserve jury trial." *Id* at 472.

2        **D.    Analysis**

3        Defendants have filed a motion for judgment on the pleadings.  Dkt. No. 29.  Plaintiff has

4    filed an opposition, Dkt. No. 31; and Defendants have filed a reply, Dkt. No. 32.

5        Defendants argue that they are entitled to judgment on the pleadings because, from the face

6    of the operative complaint and judicially noticeable documents, it is clear that (1) administrative

7    remedies were available to Plaintiff for his Eighth Amendment claim that Defendants were

8    deliberately indifferent to his safety when they housed inmate Bankhead in Plaintiff's cell; and

9    (2) Plaintiff did not exhaust these remedies.  In the operative complaint, Plaintiff identifies

10   Grievance No. 144510 as exhausting his administrative remedies.  Dkt. No. 20 at 2.  Defendants

11   argue that this grievance does not exhaust the Eighth Amendment claim raised in this action

12   because this grievance was filed prior to the events that gave rise to Plaintiff's Eighth Amendment

13   claim, concerns a June 30, 2021 classification committee hearing that recommended his transfer to

14   CTF, does not raise the cellmate attack or safety issues raised in this action, and does not identify

15   or concern the named defendants.  *See generally* Dkt. No. 29 at 8-9.  Plaintiff opposes the motion

16   for judgment on the pleadings, arguing that Defendants have filed a waiver of reply and request

17   for jury trial pursuant to 42 U.S.C. § 1997e(g); and that the Court issued an order of service on

18   March 3, 2025, which allowed the parties to conduct discovery and set a dispositive motion

19   deadline.  *See generally* Dkt. No. 31.

20       The Court GRANTS Defendants' motion for judgment on the pleadings.  This case

21   presents the "rare event" where the failure to exhaust is clear on the face of the operative

22   complaint and from judicially noticeable documents.  *Albino*, 747 F.3d at 1166 ("In the rare event

23   that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal

24   under Rule 12(b)(6)").  Grievance No. 144510 does not, and cannot, exhaust Plaintiff's Eighth

25   Amendment claim regarding the October 4, 2021 decision to place inmate Bankhead in Plaintiff's

26   cell because that grievance was filed prior to the decision regarding Bankhead.  Grievance No.

27   144510 was submitted on July 25, 2021, two months prior to the October 4, 2021 decision.  In

28   addition, the subject matter of Grievance No. 144510 is distinct from the Eighth Amendment

United States District Court
Northern District of California

claim raised herein. Grievance No. 144510 concerns a June 30, 2021 UCC housing recommendation that Plaintiff be transferred to Correctional Training Facility Level II, whereas this action concerns the October 2021 decision to place inmate Bankhead in Plaintiff's cell. Plaintiff does not dispute that administrative remedies were available to him, or that Grievance No. 144510 does not raise, much less exhaust, the Eighth Amendment claim alleged in this action. In addition, the factual issues relevant to the exhaustion issue (whether Grievance No. 144510, submitted on or about July 25, 2021, grieves the October 4, 2021 placement of inmate Bankhead in his cell, and whether administrative remedies were available to him during the relevant time period) are not intertwined with the factual issues relevant to the Eighth Amendment claim (whether Defendants placed inmate Bankhead in Plaintiff's cell, knowing that the placement exposed Plaintiff to a substantial risk of serious harm).

Plaintiff's arguments in his opposition misunderstand the waiver of reply and the Court's screening and scheduling order. A waiver of reply does not waive the affirmative defense of a failure to exhaust administrative remedies. 42 U.S.C. § 1997e(g) provides that in cases governed by the PLRA, a defendant may file a waiver of reply in lieu of an answer, and that such waiver does not constitute an admission of the allegations contained in the complaint. 42 U.S.C. § 1997e(g); *Jones,* 549 U.S. at 213-14 ("unlike in the typical civil case, defendants do not have to respond to a complaint covered by the PLRA until required to do so by the court, and waiving the right to reply does not constitute an admission of the allegations in the complaint"). The Court's screening order finding that the operative complaint stated a cognizable legal claim and setting a briefing schedule did not preclude a motion for judgment on the pleadings or a motion raising exhaustion of affirmative remedies.

Accordingly, for the reasons set forth above, the Court DISMISSES the operative complaint for failure to exhaust administrative remedies.

## II.    Request to Stay Discovery and File Third Amended Complaint

The Court DENIES as moot Defendants' request to stay merits-based discovery pending an order on the motion for judgment on the pleadings. Dkt. No. 30.

Plaintiff has requested that the Court allow him to file a third amended complaint. Dkt.

No. 31 at 2.  This request was not accompanied by a proposed third amended complaint, as required by N.D. Cal. L.R. 10-1.  N.D. Cal. L.R. 10-1 ("Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.").  In addition, it is unclear how a third amended complaint could cure the exhaustion issue.  *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (action must be dismissed unless prisoner exhausted available administrative remedies before he filed suit); *see also Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies not exhausted before prisoner sends complaint to court, action will be dismissed even if exhaustion is completed by time complaint actually is filed by clerk).  The Court DENIES Plaintiff's request for leave to file a third amended complaint without prejudice to Plaintiff re-filing this request and attaching the required proposed third amended complaint.

Any renewed request for leave to file a third amended complaint must be filed within **twenty-eight (28) days** from the date of this order.  If the Court does not receive a request for leave to file a third amended complaint within the deadline provided, the Court will dismiss this action without further notice to Plaintiff for lack of an operative complaint.

### CONCLUSION

For the reasons set forth below, the Court ORDERS as follows.

1. The Court GRANTS Defendants' motion for judgment on the pleadings, Dkt. No. 29; and GRANTS Defendants' related request for judicial notice, Dkt. No. 29-1.

2. The Court DENIES as moot Defendants' request to stay merits-based discovery pending an order on the motion for judgment on the pleadings.  Dkt. No. 30.

3. The Court DENIES Plaintiff's request for leave to file a third amended complaint.  Dkt. No. 31 at 2.  This denial is without prejudice to Plaintiff re-filing this request, with a proposed third amended complaint attached to the request.  Any renewed request to file a third amended complaint must be filed within **twenty-eight (28) days** from the date of this order.  If the Court does not receive a request for leave to file a third amended complaint by the deadline provided, the Court will dismiss this action without further notice to Plaintiff for lack of an operative complaint.

12

1    This order terminates Dkt. Nos. 29, 30.

2    **IT IS SO ORDERED.**

3    Dated:    12/3/2025

4    _____
     HAYWOOD S. GILLIAM, JR.
5    United States District Judge